# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OCWEN LOAN SERVICING, LLC and U.S. BANK, NATIONAL ASSOCIATION, as Trustee under the Pooling and Servicing Agreement dated as of February 1, 2007, GSAMP Trust 2007-HE1, Mortgage Pass-Through Certificates, Series 2007-HE1, <br><br> Appellants, <br><br> v. <br><br> RONDA J. WINNECOUR, Chapter 13 Trustee. <br><br> Appellee. | 2:19-CV-527-NR |

## MEMORANDUM OPINION ON APPEAL FROM BANKRUTPCY ORDERS DATED APRIL 15, 2019

**J. Nicholas Ranjan, United States District Judge**

This case is a consolidated appeal from the bankruptcy court's April 15, 2019, orders in *In re Hall*, No. 17-20630, and *In re Booth*, No. 17- 21741. These orders granted the Chapter 13 Trustee, Ronda Winnecour's, motions in both cases to compel proof that post-petition charges had been removed from the loans at issue. The orders did similar things in both cases, including requiring the loan servicer, Ocwen, to provide the debtor, debtor's lawyer, and the Trustee with a payoff statement and loan history reflecting reversal of all existing charges on the loans. Further, in *Hall*, the order enjoined Ocwen from seeking any additional fees, costs, and expenses throughout the life of the case.

Ocwen[1] now appeals, seeking reversal of the April 2019 orders in both *Hall* and *Booth*. Ocwen argues that the bankruptcy court abused its discretion in issuing the orders because the court did not support its decision with legal or factual determinations. Ocwen further argues that the Trustee did not meet its *prima facie* burden to support an injunction (*i.e.,* success on the merits; irreparable harm; no greater harm to nonmoving party; and public interest), and so the court should not have granted injunctive relief. In opposition, the Trustee argues that the orders were appropriate because they were either sanction orders under 11 U.S.C. § 105(a) or "comfort" orders, enforcing a form a relief agreed upon by all parties.

While the orders at issue are perhaps of little consequence to Ocwen and the Trustee from a monetary perspective, this appeal presents important issues since Ocwen's imposition of post-petition fees is a recurring issue in bankruptcy cases in this district.

After a careful review of the parties' positions and the record below, this Court ultimately finds that the record below lacks sufficient clarity to decide this matter and affirm the court's orders. Specifically, it is unclear whether the Trustee sought its relief as a sanction or a comfort order, and if as a sanction, it is unclear whether the bankruptcy court sanctioned Ocwen for a continuation of conduct that was detailed in a prior case. Thus, in order to provide the parties with the opportunity to make a better record before the bankruptcy court, and for that court to consider more clearly presented

---

[1] U.S. Bank, the holder of the mortgage lien in *Hall*, joins Ocwen in appealing the April 2019 order in that case. For ease of reference, the Court refers to all appellants as "Ocwen," since Ocwen appeals both April 2019 orders and both were specifically directed at Ocwen.

arguments, the Court will vacate the April 2019 orders and remand the cases to the bankruptcy court.

## FACTUAL & PROCEDURAL BACKGROUND

**I.    The *Hall* case.**

Ms. Hall filed her Chapter 13 bankruptcy petition on February 20, 2017. U.S. Bank is the holder of a secured first mortgage lien on a property in Pittsburgh. [ECF 7, p. 3; ECF 11, p. 2]. On January 3, 2018, U.S. Bank secured a proof of claim in the amount of $79,105.98. The servicer listed on the proof of claim was Ocwen. [ECF 11, p. 2].

On September 11, 2017, Ocwen filed a notice of post-petition mortgage fees, expenses, and charges (PPFN) in the amount of $400.00 for "Plan Review & Entry of Appearance." [ECF 7, pp. 3-4; ECF 11, p. 3].

On April 20, 2018, Ocwen filed a withdrawal of the PPFN. The Trustee, concerned about the charges, asked Ocwen's counsel for affidavits confirming that the $400.00 charge had been removed from Ms. Hall's loan history. [ECF 11, p. 3]. On September 5, 2018, Ocwen supplemented its withdrawal with a declaration by James Broome, attesting that "all post-petition fees and charges previously assessed on Debtor's loan have been removed." [ECF 7, p. 4; ECF 11, p. 3]. Attached to the supplement was a post-petition loan history that showed another $1,260.82 in charges (for late charges and legal fees) that the Trustee claims were never disclosed in the PPFN and that Ocwen claims were reversed. [ECF 7, p. 4; ECF 11, p. 3]. Although most of the legal fees had been credited back on the loan history, according to the Trustee, late charges, in the amount of $21.64, remained on the loan. [ECF 11, p. 3].

On October 24, 2018, the Trustee moved to compel a complete loan history and to enjoin Ocwen from assessing additional fees, costs, and charges.

[ECF 7, pp. 4-5; ECF 11, pp. 3-4]. Ocwen responded on December 12, 2018, including another declaration by Mr. Broome. [ECF 7, p. 6].

## II. The *Booth* case.

Mr. Booth filed his Chapter 13 bankruptcy petition on April 26, 2017. Ocwen is the holder of a secured first mortgage lien on Mr. Booth's property in Beaver Falls. [ECF 7, p. 8; ECF 11, p. 4]. On September 1, 2017, Ocwen filed a secured proof of claim in the amount of $107,820.04. [ECF 11, p. 4]. On December 20, 2017, Ocwen filed a PPFN in the amount of $750.00—$500 for "Proof of Claim" and $250 for "Proof of Claim 410A." [ECF 7, p. 8; ECF 11, p. 4].

As in *Hall*, on April 19, 2018, Ocwen withdrew the PPFN. Again, the Trustee was concerned about the charges listed in the Notice. On November 16, 2018, the Trustee moved to compel proof that charges had been removed from the loan. [ECF 7, p. 9; ECF 11, p. 4]. On December 14, 2018, Ocwen responded and included a declaration by James Broome, attesting that "Ocwen will not seek to collect any fees listed on the withdrawn PPFN in the future." [ECF 7, p. 10; ECF 11, p. 4].

## III. The January and April 2019 hearings.

Short hearings occurred on January 16, 2019 on both of the Trustee's motions in *Hall* and *Booth*, but they were continued to April 10, 2019, to await a decision by Bankruptcy Judge Agresti in a separate case relating to multiple matters also involving Ocwen, called *Ransom*. [ECF 6-3 (*Hall* Jan. 2019 Tr.); ECF 5-3 (*Booth* Jan. 2019 Tr.)].

Ultimately, Judge Agresti found that Ocwen failed to provide complete loan histories to other debtors and trustees, despite having been ordered to do so many times. The court held that Ocwen's failure to comply with 13 default orders warranted a finding of civil contempt and imposition of sanctions. *See*

*Winnecour v. Ocwen Loan Servicing, LLC* (*In re Ransom*), 599 B.R. 791, 821 (Bankr. W.D. Pa. 2019).

At the April 10, 2019, hearings in *Hall* and *Booth*, the bankruptcy court asked about the status of *Ransom*, noting that Ocwen has a history of failing to give clear loan histories. [ECF 6-4 (*Hall* Apr. 2019 Tr.), 3:23-24 (The Court: "What is the problem that -- whatever she's been shown isn't clear."), 4:20-21 (The Court: "Why are they even on your records if they're not being charged?")].

Ocwen mainly argued at the hearings and in its papers that the matter was moot due to the withdrawal of the PPFNs and also promised the court at oral argument that it would not charge future fees on the loan. *See, e.g.,* [ECF 6-4 (*Hall* Apr. 2019 Tr.), 5:15-16 (Mr. Messinger: "We're not going to do it. We're not going to do it.")]. The court appeared to express doubt that Ocwen would refrain from charging future fees and that it had reversed all prior fees. *See, e.g.,* [ECF 5-4 (*Booth* Apr. 2019 Tr.), 3:6-9 (The Court: "Mr. Messinger, let's clarify. I don't think it's unfair that the trustee's requesting this when we've had so many issues. So, I understand. I hope we don't get a lot of these.")]. As a result, it asked the Trustee to submit orders that it could sign. [ECF 6-4 (*Hall* Apr. 2019 Tr.), 9:15-16 (The Court: "Ms. Winnecour, you're going to redraft an order that only gives you the right for that in this particular case only."); ECF 5-4 (*Booth* Apr. 2019 Tr.), 2:24 (The Court: "So, same order.")].

After the April 10, 2019, hearings, the bankruptcy court entered an order in *Hall*, enjoining Ocwen from seeking any additional fees, costs, and expenses throughout the life of the case. [Case No. 17-20630, ECF 94]. It further ordered Ocwen, in both *Hall* and *Booth*, to provide "the Debtor, Debtor's counsel, and the Trustee with a pay-off statement and current loan history reflecting reversal of all of the existing charges" within thirty days of the Trustee's notice of final cure. [ECF 1-2; Case No. 17-20630, ECF 94]. Finally,

it ordered in *Booth* that Ocwen produce a complete loan history from inception of the loan reflecting reversal of all charges. [ECF 1-2].

## IV. This appeal.

Ocwen's appeal of these orders is now before the Court. Ocwen argues, essentially, that the bankruptcy court erred by enjoining Ocwen without conducting a balancing of the equities and making the legal and factual findings necessary to issue an injunction. In opposition, the Trustee argues that the orders were appropriate because they were either sanction orders under 11 U.S.C. §105(a) or were simply "comfort" orders, ordering a form a relief agreed upon by all parties. Oral argument was held on March 18, 2020.

## **DISCUSSION & ANALYSIS**

While the Court finds that the April 2019 orders could be considered appropriate Section 105(a) sanctions, it cannot discern from the record or from the parties' arguments on appeal that this is exactly what the orders were. As a result, the Court will vacate and remand, allowing the parties to make a clearer record before the bankruptcy court.

## I. The April 2019 orders could arguably be construed as Section 105(a) sanctions, but it is not entirely clear.

From this Court's review in piecing together the transcripts, the April 2019 orders at first seem like appropriate orders issued under Section 105(a). Section 105(a) permits a broad form of sanctions, providing:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. §105(a). Under this section, bankruptcy courts may impose sanctions with injunctive aspects to them, without requiring a finding of the *prima facie* elements of injunctions (*i.e.*, success on the merits; irreparable harm; no greater harm to nonmoving party; and public interest). *See, e.g., In re Englert*, 495 B.R. 266, 274 (Bankr. W.D. Pa. 2013) (ordering Ocwen as a discovery sanction and without an injunction analysis "to revise the monthly billing statements"); *In re Patton*, No. 07–13996DWS, 2009 WL 136817, at *4 (Bankr. E.D. Pa. Jan. 20, 2009) (finding case commenced in bad faith can result in Section 105(a) sanction in the form of enjoining future filings); *In re Rivera*, 369 B.R. 193, 195-200 (Bankr. D.N.J. 2007) (indicating court did not err in issuing injunctive sanction sua sponte).

Here, it appears that the bankruptcy court may have been issuing injunctive relief in the form of a sanction, and thus did not have to find that the traditional injunction elements were met. For example, as reflected at the January 2019 hearings, the bankruptcy court expressed that Ocwen had a history of "offensive" conduct by including improper charges, and the court wanted to see how *Ransom* was decided before issuing any orders. *See* [ECF 6-3 (*Hall* Jan. 2019 Tr.), 2:23-3:3 (The Court: "It has been very offensive to this Court, as you well know, Mr. Messinger, Ocwen's behavior on these loan modifications -- I mean on the histories and the charges that are being put forward. The trustee has to have been so active and so involved in order to do this. It's just not the way we want to work here."); 5:21-22 (The Court: "I don't like the charges being there. I've never liked that.")].

By the April 2019 hearings, *Ransom* had been decided, with certain sanctions imposed. At the April 2019 hearings, the bankruptcy court was receptive to putting injunctive orders in place, reasoning that it did not want to engage in administrative management of minor matters. [ECF 6-4 (*Hall*

Apr. 2019 Tr.), 8:8-9 (The Court: "I don't want to be supervising these cases like this, all right?"); ECF 5-4 (*Booth* Apr. 2019 Tr.), 3:6-9 (The Court: "Mr. Messinger, let's clarify. I don't think it's unfair that the trustee's requesting this when we've had so many issues. So, I understand. I hope we don't get a lot of these.")].

If the April 2019 orders were, indeed, injunctive sanctions, then it would have been within the bankruptcy court's broad discretion to order it, even without applying the normal factors for an injunction. *See, e.g., In re Englert*, 495 B.R. at 274; *In re Patton*, 2009 WL 136817, at *4; *In re Rivera*, 369 B.R. at 195-200.

The problem, though, with affirming the bankruptcy court on this basis is two-fold.

First, at oral argument on this appeal, the Trustee's counsel argued that the bankruptcy court's orders were **not** sanction orders. *See* [March 18, 2020 Tr., 17:21-18:2 (The Court: "Was this a sanction, is that the trustee's position, that this was a sanction, and if it was, what was the basis for the sanction?" Mr. Katz: ". . . Your Honor, I think that this really was intended by both the trustee and the Court, as pretty clearly set forth in the transcript, as a comfort order.")]. Thus, given that both Ocwen and the Trustee have argued that the court's orders were not sanction orders (and with the record being far from clear on this), the Court cannot affirm the orders on this basis.

Second, it is unclear from the record below the basis for any sanction. For the bankruptcy court to impose a sanction, then it must make specific findings, supported by clear and convincing evidence. *See, e.g., Ransom*, 599 B.R. at 802 ("It is well-recognized that both 11 U.S.C. § 105(a) and a court's inherent power to sanction provide bankruptcy courts with the power to impose civil contempt sanctions," requiring proof by "clear and convincing evidence").

- 8 -

While the record reflects references to Ocwen's conduct from *Ransom*, it is unclear whether that same conduct or similar conduct formed the basis for the bankruptcy court's findings here.

Thus, based on the lack of clarity in the record on this issue and the parties' positions on appeal, the Court cannot affirm the bankruptcy court's orders on this basis, absent further factual development.

**II.     It is unclear whether the orders are "comfort" orders.**

At oral argument, the Trustee argued that the April 2019 orders were "comfort" orders. "A 'comfort order' is a bankruptcy term of art for an order confirming an undisputed legal result . . . ." *In re Hill*, 364 B.R. 826, 827 n.1 (Bankr. M.D. Fla. 2007).

Specifically, at oral argument on this appeal, the Trustee argued that the April 2019 orders were comfort orders rather than sanctions. *See* [March 18, 2020 Tr., 17:25-18:2 (Mr. Katz: "Your Honor, I think that this really was intended by both the trustee and the Court, as pretty clearly set forth in the transcript, as a comfort order."); 18:12-15 (Mr. Katz: "The trustee specifically referenced the relief she was requesting as being in the nature of a comfort order. The judge I think at some point in time expressly said she was going to grant the trustee the comfort order."); 20:5-6 (Mr. Katz: "That's why I think that a comfort order is the correct analysis in this particular case."); and 21:19-20 (Mr. Katz: "Well, I think on these particular facts it was a comfort order.")].

There is some support in the record that the April 2019 orders were comfort orders, since Ocwen agreed at the April 2019 hearing in *Hall* that it would not charge additional fees to the debtor's account. *See* [ECF 6-4 (*Hall* Apr. 2019 Tr.), 5:15-16 (Mr. Messinger: "We're not going to do it. We're not going to do it.")]. The bankruptcy court specifically used the word "comfort" during the April 2019 *Hall* hearing. [ECF 6-4 (*Hall* Apr. 2019 Tr.), 8:4-9 (Ms.

- 9 -

Winnecour: "But this isn't a one-off, and it won't be a one-off tomorrow. So, I want comfort language, and that's what I think I requested." The Court: "I'm prepared to give her comfort language.")]. Further, the bankruptcy court used the word "safety" at the April 2019 *Booth* hearing. [ECF 5-4 (*Booth* Apr. 2019 Tr.), 3:2-4 (The Court: "I think you're just getting a safety order. That's all your getting because they've already agreed to it in their declaration here. All right.")].

However, at oral argument on this appeal, Ocwen persuasively argued the April 2019 orders could not have been comfort orders, since Ocwen never agreed to the form of relief. *See* [March 18, 2020 Tr., 28:22-29:7 (Mr. Messinger: "But the order didn't just say, do what you said you were going to do in court. The order actually enjoined us from doing things. It actually required us to take an affirmative action, which was to provide a payoff statement, the order required us to provide current loan histories, and to show things that we said that we were going to do in court. So it's not just saying, Mr. Messinger, you have to do what you said you were going to do in court, which would be more in the nature of a comfort order, but it actually went further and required us to do certain things.")].

There is some support in the record, too, that these were not comfort orders, since Ocwen opposed the Trustee's motions to compel in both cases and explicitly opposed the requested comfort language before the bankruptcy court. The court even noted that Ocwen was "fighting" such an order. *See* [ECF 6-4 (*Hall* Apr. 2019 Tr.), 5:17-21 (The Court: "Well, they why not put it in an order that she wants that you're not going to do it? Why are you fighting about this?" Mr. Messinger: "Because it is -- it's almost like if we do it here, we're going to see 100, 200 more of these."); 9:1-2 (Ms. Winnecour: "So, then why do you care?" Mr. Messinger: "It's the principle of the matter.")].

Simply put, there is contradictory, unclear evidence in the record on whether the April 2019 orders were comfort orders.

**III. Because the record is unclear, the Court will remand for clarification.**

Where the record is unclear regarding a lower court's basis for its ruling, appellate courts in this Circuit typically vacate and remand for clarification. *See, e.g., United States v. Mummert*, 34 F.3d 201, 205-06 (3d Cir. 1994) ("[W]here the record does not make clear whether the district court's denial of departure was based on legal or discretionary grounds, . . . the appropriate course of action is to vacate the sentence and remand for the district court to clarify the basis for its ruling.") (citations omitted); *Centrix HR, LLC v. On-Site Staff Management, Inc.*, 349 F. App'x 769, 774 (3d Cir. 2009) ("Given the contradictions noted above, the inadequate explanation by the parties and the Magistrate Judge of those contradictions, and the somewhat haphazard portions of the record presented to us on appeal, we are unable to determine that the Magistrate Judge's award of $1.6 was clearly erroneous—or that it was not. Accordingly, we will remand this issue to the Magistrate Judge for clarification or recalculation of that award."); *Ismael v. Ali*, 141 F. App'x 36, 37-38 (3d Cir. 2005) (remand required for clarification as to trial court's reasons for denial of motion for summary judgment); *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000) ("When a plaintiff requests federal equitable tolling but the facts underlying that request are disputed or unclear, a court may remand the case to determine if the facts actually support tolling.") (citation omitted).

Because the record is unclear and the parties have divergent views on the nature of the relief issued by the bankruptcy court, this Court is not in a position to review the bankruptcy court's orders in any meaningful way. As such, in order to provide the parties with the opportunity to make a better

record before the bankruptcy court, and for that court to have the opportunity to consider the arguments presented and framed in a clearer way than they were originally presented, the Court vacates the orders and remands to the bankruptcy court for consideration on a more complete record.

This is not to say that the bankruptcy court's orders were erroneous. But given the apparent importance of what both parties agree is a recurring issue in bankruptcy proceedings in this district, the bankruptcy court should have an opportunity to clarify its orders on a clearer record.

## **CONCLUSION**

For all the reasons discussed above, the bankruptcy court's April 15, 2019, orders are VACATED and the matter REMANDED so that the record can be further developed consistent with this opinion. An appropriate order follows.

DATED this 31st day of March, 2020.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge